IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| COREY TAYLOR, #534419, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 1:24-cv-00045 |
| BRANDON PEONE, et al., | ) ) | JUDGE CAMPBELL |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Corey Taylor, a state inmate confined at the Turney Center Industrial Complex (TCIX), commenced this action by filing a handwritten complaint under 42 U.S.C. § 1983 (Doc. No. 1), an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2), and a motion for temporary restraining order (TRO) with supporting materials. (Doc. Nos. 3–5.) In addition to an affidavit supporting his TRO Motion (Doc. No. 5), Plaintiff filed an additional affidavit which appeared to assert a claim that had not been asserted in his Complaint. (Doc. No. 6.)

The Court granted pauper status to Plaintiff and assessed the filing fee against his inmate trust account. (Doc. No. 14.) Then, noting that two separate filings contained claims to relief in violation of Federal Rule of Civil Procedure 3, the Court ordered Plaintiff to reconcile these separate filings by submitting "one Amended Complaint containing all of his legal claims and factual allegations." (Doc. No. 16.)

In lieu of filing an Amended Complaint, Plaintiff has addressed his pleading disparity by filing a Motion to Strike the affidavit recorded at Doc. No. 6. (Doc. No. 17.) The Motion to Strike is **GRANTED**. The Clerk **SHALL** strike Doc. No. 6 from the record.

This case is now ripe for initial review under the Prison Litigation Reform Act. However,

prior to addressing the viability of the Complaint, the Court will take up Plaintiff's TRO Motion (Doc. No. 3) and related filings. (Doc. Nos. 4, 5, 15, and 18.) Those filings rely on the allegations set out below.

## I. BACKGROUND

After filing a prior lawsuit against Defendant Brandon Peone, a TCIX guard, Plaintiff was then harassed by Peone on March 28, 2024, for wearing a kufi cap on his head. (Doc. No. 3 at 2.) Peone "ha[d] told Plaintiff he could wear his kufi anytime in the housing unit but not on the compound." (*Id.* at 4.)[1] Plaintiff accused Peone of retaliating against him due to the prior (but still pending) lawsuit between them, and informed Peone that he would be filing a new complaint against him. Defendant Andre Johnson, an assistant warden at TCIX, overheard this exchange and "became irate, hostile and aggressive which turned into verbally assaulting [Plaintiff]." (*Id.* at 3.) Johnson "yelled 'fuck you'" and Plaintiff "replied the feelings are mutual," causing Johnson to order Peone to take Plaintiff to "the hole." (*Id.*) Plaintiff was charged with "out of place," which he claims is a fraudulent charge and one that should not result in segregation time, but only a verbal or written warning. (*Id.*) This occasion marked the second time that Plaintiff received a disciplinary write-up for engaging in constitutionally protected activity, though he does not indicate that the two occasions are related. (*Id.* at 4.) The consequences of his confinement in disciplinary segregation have included restriction from rehabilitative educational programs, loss of the ability to order food packages, denial of pay raises at his prison job, denial of a parole appeal, and the fact that he "can be placed on close custody which makes him lose all or some good conduct credits." (*Id.*) Plaintiff claims that the angry, profane words of Johnson and the harassing actions of Peone

---

[1] Plaintiff later clarifies that it is the color of his kufi that drew Peone's attention. Peone informed Plaintiff that, per policy, only white, grey, or black kufis could be worn "on the black top 'compound.'" (Doc. No. 3 at 5.)

have caused him to fear that he might be subject to a retaliatory transfer to a more dangerous prison, a physical attack in the middle of the night, or other retaliatory harassment. (*Id.* at 5–7.) He seeks a TRO "to be protected from [such] harassment." (*Id.* at 11.) Most recently, Plaintiff claims that, on July 10, 2024, "several inmates" informed him that Peone told them "that [Peone] and Johnson don't play that lawsuit mess and that Plaintiff is going to get what's coming to him." (Doc. No. 18 at 1.)

## II. DISCUSSION

Federal Rule of Civil Procedure 65 governs the court's power to grant injunctive relief, including temporary restraining orders without notice. Fed. R. Civ. P. 65(b). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). However, "[i]f the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978) (internal citations omitted). "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Ciavone v. McKee*, No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). Further, "[w]here a preliminary injunction is mandatory—that is, where its terms would alter, rather than preserve, the status quo by commanding some positive act . . . the requested relief should be denied unless the facts and

law clearly favor the moving party." *Glauser-Nagy v. Med. Mut. of Ohio*, 987 F. Supp. 1002, 1011 (N.D. Ohio 1997) (citing cases).

In determining whether to issue a TRO or preliminary injunction under Federal Rule of Civil Procedure 65, a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *See*, *e.g.*, *A&W X-Press, Inc. v. FCA US, LLC*, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. July 14, 2022) (citing *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted). Where the movant seeks a mandatory injunction that alters the status quo, he "must satisfy a heightened burden . . . as to both the likelihood-of-success prong and on the balance of the harms." *Cole v. Goossen*, 402 F. Supp. 3d 992, 1012 (D. Kan. 2019); *accord Glauser-Nagy*, *supra* (mandatory injunction may issue only if "facts and law clearly favor the moving party").

At the pleading stage, the Court cannot say that Plaintiff is any more likely than Defendants to succeed on the merits of this lawsuit; at least, he has not met his heightened burden on this prong as required to justify an order commanding a change in the parties' conduct. As grounds for the requested TRO, Plaintiff states that Peone engaged in retaliatory conduct as described in the Complaint (*compare* Doc. No. 3 *with* Doc. No. 1) and that he told other inmates on one occasion that Plaintiff was "going to get what's coming to him." Plaintiff fears that Peone and Johnson will further antagonize him and perhaps even physically harm him if the Court does not intervene. He proposes an injunctive order that requires (1) Peone to "make no attempts to harass, target,

approach or interfere with Plaintiff," and "not to come within 100 ft of Plaintiff" or communicate with him; (2) Johnson "to refrain from all unprofessional conduct, malfeasances and the ratifications of illegal adverse actions being taken against Plaintiff," and not to come within 100 feet of Plaintiff or communicate with him; and (3) all Tennessee Department of Correction and TCIX staff members to refrain from retaliating against Plaintiff or otherwise infringing on his rights. (Doc. No. 4-1.)

Plaintiff's proposal would effectively enjoin Defendants (and others) from engaging in bad behavior, as defined using terms (harassment, targeting, unprofessional conduct, retaliation, infringement) that are too subjective to sustain any viable injunctive order. *See Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 362 (6th Cir. 2022) (an injunctive order "must be couched in specific and unambiguous terms" or else be subject to vacatur) (citing, *e.g.*, Fed. R. Civ. P. 65(d)(1)). Moreover, to justify emergency injunctive relief, Plaintiff must "clearly show" that he will suffer "immediate and irreparable injury, loss, or damage . . . before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Plaintiff's assertion that he fears further retaliatory or harassing actions, or that Peone might otherwise make good on the purported threat to give Plaintiff "what's coming to him," does not "rise to the level of a substantial threat of suffering[] if the injunction is not granted, let alone irreparable injury." *Shelby v. Rowe*, No. 5:22-CV-265-BR, 2023 WL 4565975, at *2 (N.D. Tex. July 17, 2023); *see also Barno v. Padilla*, No. 20-CV-03886-SI, 2020 WL 8515011, at *1 (N.D. Cal. Dec. 13, 2020) (holding that prisoner seeking TRO to stop "ongoing unconstitutional pattern of threats, retaliation and harassment" from guards and fellow inmate "falls far short of showing that irreparable harm is likely and imminent if interim relief is not granted"); *Sublett v. Bryant*, No. 5:15-CV-16-JMH-REW, 2015 WL 5972427, at *2 (E.D. Ky. Oct. 14, 2015) ("The relief that Plaintiff seeks [in his TRO motion] is

5

purely speculative—to be free from retaliation if he files future grievances."). Where the claimed irreparable damage is speculative or may never occur, a TRO should not be granted. *Sharp v. Cureton*, 319 F.3d 259, 272 (6th Cir. 2003).

Even if Plaintiff reasonably feared a non-speculative injury which could not be repaired in the normal course of litigation, and even if the terms of his requested injunctive order were more definite, a TRO in this situation would severely compromise the deference that state officials are generally afforded in the administration and control of a prison. The potential for resulting disruption requires the Court to proceed with the utmost care in recognition of the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286–87 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). By granting the relief requested in Plaintiff's proposed order and requiring Peone and Johnson to remain at least 100 feet away from him and refrain from communicating with him, the Court would effectively be restricting the work-related movements and communications of a correctional officer and assistant warden inside the prison they are charged with securing. This outcome would unreasonably disrupt the integrity of TCIX's administration, in which the public has an established interest. *See Glover*, 855 F.2d at 286–87 (setting forth various public policy concerns relating to court intrusion into jail administrative matters and holding that a federal court should not "attempt to administer any portion of a state correctional system program except in the most compelling situations").

On balancing the relevant factors, the Court finds that Plaintiff has not carried his burden of demonstrating the need for emergency injunctive relief.

### III. CONCLUSION

For the reasons given above, Plaintiff's TRO Motion (Doc. No. 3) and related motions (Doc. Nos. 4, 15, and 18) are **DENIED**.

6

Case 1:24-cv-00045 Document 19 Filed 07/29/24 Page 6 of 7 PageID #: 102

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE